FILED

2021 Nov-22  PM 02:59
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| BRASFIELD & GORRIE, LLC, | ) ) ) | |
|     Plaintiff and Counter Defendant, | ) ) ) | |
|   v. | ) ) | 2:20-cv-00984-LSC |
| HIRSCHFELD STEEL GROUP LP d/b/a HIRSCHFELD INDUSTRIES and W&W-AFCO STEEL, LLC | ) ) ) ) ) ) | |
|     Defendants and Counter Claimants. | ) ) ) | |

## MEMORANDUM OF OPINION AND ORDER

Before the Court are Brasfield and Gorrie, LLC's ("B&G") Motion to Compel (Doc. 31) and Hirschfeld Steel Group LP d/b/a Hirschfeld Industries ("Hirschfeld") (which through merger now exists as surviving entity W&W-AFCO Steel LLC) and W&W-AFCO Steel LLC's (collectively "W&W-AFCO") Motion to Quash (Doc. 32). The motions have been fully briefed and are ripe for review. For the reasons stated below, B&G's Motion to Compel (Doc. 32) is GRANTED IN

PART and DENIED IN PART and W&W-AFCO's Motion to Quash (Doc. 31) is

GRANTED IN PART and DENIED IN PART.[1]

## I.     BACKGROUND

B&G was awarded a contract by the Alabama Department of Transportation

for the construction and improvement of a 4.165-mile section of Interstate 59 in

Tuscaloosa County, Alabama (the "Project"). On November 14, 2017, B&G

executed a purchase order with Hirschfeld to detail and fabricate structural steel and

two steel arches over McFarland Boulevard (the "North Arch" and the "South

Arch") in conformance with contract drawings and specifications. In September

2018, Hirschfeld merged into W&W-AFCO, and W&W-AFCO assumed

Hirschfeld's rights and obligations under the purchase order with B&G.

W&W-AFCO delivered the four segments of the South Arch to the Project

site on June 19 and 20, 2019. During the field "fit up" of the four segments, B&G

alleges they discovered nonconformances with the South Arch and on June 28, 2019,

notified W&W-AFCO of such. On July 25 and 26, 2019, W&W-AFCO personnel

traveled to the Project site, performed field measurements, engineering, and

surveys, and jacked, shimmed, and positioned the South Arch for welding and

---

[1] B&G's Motion to Compel and W&W-AFCO's Motion to Quash contain the same arguments.
Accordingly, the Court will address both at the same time.

erection, eventually representing that the South Arch was erectable as delivered. In November 2019, B&G attempted to erect the South Arch but failed. The parties dispute the cause of the failure of the South Arch. On November 8, 2019, B&G sent notice to W&W-AFCO blaming it for the failure and claiming that it had incurred numerous costs relating to the failure. (Doc. 33–1.) On December 4, 2019, B&G warned W&W-AFCO to put its insurance carries on notice due to the potential impact of a rejection of the South Arch. (Doc. 33–2 at 2.) On that same day, W&W-AFCO contacted Genesis Structures, Inc. ("Genesis"), a third-party engineering firm, for the first time. (Doc. 33–5 at 2.) On December 10, 2019, W&W-AFCO wrote B&G disputing "liability for the costs and impacts associated with the fit-up of the South Arch." (Doc. 33–4.) W&W-AFCO also informed B&G in the same letter that it would retain Genesis to examine the issue.

On March 18, 2020, B&G issued its first notice of default to W&W-AFCO and requested that W&W-AFCO submit a written plan and schedule to cure the default. (Doc. 32–4.) W&W-AFCO responded on March 20, 2020 and stated that it had hired Genesis to investigate the issue and expected Genesis's results the following week. (Doc. 32–5 at 4.) On March 26, 2020, W&W-AFCO provided B&G with Genesis's report regarding the South Arch dated March 24, 2020. (Doc. 32–6.) On March 27, 2020, B&G informed W&W-AFCO that the Genesis report and

W&W-AFCO's March 20, 2020 response were insufficient to cure the default. (Doc. 32–9.) Like with the South Arch, B&G also claimed that W&W-AFCO defectively fabricated the steel for the North Arch. After numerous letters and a joint survey of the North Arch, B&G declared W&W-AFCO in default on June 5, 2020. On June 12, 2020, W&W-AFCO denied any liability for the defective arches. As a result, B&G terminated the purchase order and initiated litigation. On June 17, 2020, W&W-AFCO sent B&G another Genesis report dated June 10, 2020. (Doc. 32–14.) Like the South Arch report of March 24, 2020, this report contained Genesis's analysis of whether the North Arch was properly fabricated by W&W-AFCO.

On May 5, 2021, B&G issued a document subpoena to Genesis generally seeking documents relating to the arches or services rendered by Genesis on the Project. (*See* Doc 32–1.) On May 19, 2021, Genesis served an objection to B&G's subpoena on the grounds that Genesis constituted an expert engaged by W&W-AFCO in anticipation of litigation and not expected to appear as a witness, and that Genesis's documents were prepared in advance of litigation for another party. (Doc. 32–16.) On September 7, 2021, B&G issued Genesis a 30(b)(6) subpoena to appear at a deposition to testify primarily on the services rendered to W&W-AFCO relating to the arches and the Project. (Doc. 33–10.) On September 13, 2021, counsel for Genesis served an objection to B&G's subpoena based on Genesis being an expert

engaged in anticipation of litigation. (Doc. 33–11.) On September 24, 2021, B&G

filed their Motion to Compel (Doc. 32) and W&W-AFCO filed their Motion to

Quash (Doc. 31.)

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 45, this Court must quash a subpoena

that seeks disclosure of privileged or otherwise protected material if no exception or

waiver applies. Fed. R. Civ. P. 45(d)(3)(A). Under Federal Rule of Civil Procedure

26, this Court may enter a protective order to protect a party or person from

annoyance or oppression, among other things. Fed R. Civ. P. 26(c)(1); *Farnsworth v.*

*Procter & Gamble Co.*, 758 F.2d 1545, 1548 (11th Cir. 1985) (noting that Rule 26(c)

"gives the district court discretionary power to fashion a protective order."). When

entering a protective order, the Court may forbid the disclosure of discovery and

limit the scope of discovery to certain matters, among other things. Fed. R. Civ. P.

26(c)(1).

## III.    DISCUSSION

B&G's Motion to Compel asks this Court to order Genesis to: (1) produce

documents responsive to the subpoena for the production of documents and (2)

designate representative(s) to appear for deposition and testify on behalf of Genesis

as commanded in the 30(b)(6) subpoena. (Doc. 32 at 2.) W&W-AFCO seeks to

quash both subpoenas and to have this Court enter a protective order prohibiting further discovery directed to Genesis. (Doc. 31 at 1–2.) As these motions deal with the same subject matter, this Court will address both simultaneously.

### A. Genesis's Reports

B&G contends that the reports compiled by Genesis are categorically not work product (Doc. 34 at 2.) B&G also contends that even if these reports and the underlying data are protected by the work product privilege, W&W-AFCO has waived the word product privilege. (Doc. 32 at 14.)

### 1.  Work Product

The threshold question raised by every invocation of the work-product protection is whether the requested materials are, in fact, work product. "[T]o be shielded from discovery the document must be (1) produced by an attorney or her agent and (2) created in anticipation of litigation." *Adams v. City of Montgomery*, 282 F.R.D. 627, 633 (M.D. Ala. 2012), supplemented, No. 10-CV-924, 2012 WL 1952294 (M.D. Ala. May 30, 2012)). With regard to the first requirement, attorney work product protection applies not only to documents prepared by attorneys, but to those prepared by parties themselves and/or other non-attorney representatives, as long as the documents are prepared in anticipation of litigation. *United States v. Nobles*, 422 U.S. 225, 254 n.16 (1975) (White, J., concurring)). With regard to the

second requirement, the former Fifth Circuit explained that "as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation," it receives work product protection. *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981).[2] Further, materials "geared toward a possible defense against a claim" are protected by the work-product doctrine. *See Bridgewater v. Carnival Corp.*, 286 F.R.D. 636, 643 (S.D. Fla. 2011) (holding that an accident report prepared by Carnival nine days after the incident was protected by the work-product doctrine because the primary purpose was to aid Carnival in possible future litigation).

Litigation need not necessarily be imminent. *See, e.g., United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982). *See also Osterneck v. E.T. Barwick Indus. Inc.*, 82 F.R.D. 81, 87 (N.D. Ga. 1979) ("[T]he test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.") (quoting 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedures*, § 2024 (1970)). The burden to demonstrate the applicability of the work-

---

[2] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

product doctrine falls on the shoulders of the party claiming the protection. *U.S. v. Moore,* 485 F.2d 1165, 1166 (5th Cir.1973).

Here, the requested materials are work-product. On November 8, 2019, B&G sent notice to W&W-AFCO blaming it for the defects and claiming that it had incurred numerous costs relating to the failed erection of the South Arch. (Doc. 33–1.) On December 4, 2019, B&G requested that W&W-AFCO put its insurance carriers on notice due to the potential impact of a rejection of the South Arch. (Doc. 33–2 at 2.) On that same day, W&W-AFCO contacted Genesis for the first time. (Doc. 33–5 at 2.) On December 10, 2019, W&W-AFCO wrote B&G rejecting "liability for the costs and impacts associated with the fit-up of the South Arch." (Doc. 33–4.) W&W-AFCO also informed B&G in the same letter that it would retain Genesis to examine the issue. Thus, Genesis was not engaged until approximately six months after B&G put W&W-AFCO on notice of potential defects with the South Arches and only after W&W-AFCO had been blamed for the South Arch failure. B&G was essentially threatening litigation. As a result, W&W-AFCO retained Genesis to create materials that were designed to defend against a possible claim. *Bridgewater*, 286 F.R.D. at 643. In light of the nature of the Genesis reports and the factual circumstances surrounding their creation, these reports and the

Page 8 of 19

communications and data surrounding them are work product. *Osterneck*, 82 F.R.D. at 87. Accordingly, the work-product doctrine applies.

## 2. Waiver

Because the work-product doctrine extends to Genesis's reports and data, the Court must next consider whether W&W-AFCO did anything to waive that protection.[3] Generally, "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ Pr. 26(b)(3)(A). However, a party may waive the work product protection "when documents are voluntarily shared with an adversary or ... when protected materials are disclosed in a manner which substantially increases the opportunity for potential adversaries to obtain the information." *Ala. Aircraft Indus., Inc. v. Boeing Co.*, No. 2:11-cv-035777-RDP, 2017 WL at *3 (N.D. Ala August 9, 2017); *see also* Doe No. 1 v. U.S., 749 F.3d 999, 1008 (11th Cir. 2014) ("Disclosure of work-product materials to an adversary waives the work-product privilege."). Due to the sensitive nature of work-product materials and the policy behind maintaining their secrecy, generally speaking, when the work product protection has been waived, it is "limited to the information actually disclosed, not subject matter

---

[3] The Court also notes that work product is discoverable if a party can show both substantial need and undue hardship. *Castle v. Sangamo Weston, Inc.*, 744 F.2d 1464, 1467 (11th Cir. 1984). However, B&G failed to argue that is has a substantial need or undue hardship.

waiver." *Stern v. O'Quinn*, 253 F.R.D. 663, 683 (S.D. Fla. 2008) (citing *Continental*

*Casualty Co. v. Under Armour, Inc.*, 537 F.Supp.2d 761, 773 (D. Md. 2008); Epstein,

*The Attorney–Client Privilege and the Work Product Doctrine* 612 (2001)

("[I]nadvertent or even intentional disclosure of work-product documents will not

necessarily constitute waiver as to all such documents."); 6 James Wm. Moore, *et*

*al., Moore's Federal Practice* § 26.70[6][c] (3d ed.2004) at 26–467 ("A waiver of work-

product protection encompasses only the items actually disclosed. Thus, disclosure

of some documents does not imply that work product protection has been destroyed

for other documents of the same character.")).

     Here, the work product protection has been waived for Genesis's reports that

were produced to B&G. On March 26, 2020, W&W-AFCO provided B&G with

Genesis's report regarding the South Arch dated March 24, 2020. (Doc. 32–6.) On

June 17, 2020, W&W-AFCO sent B&G the Genesis report dated June 10, 2020.

(Doc. 32–14.) Like the South Arch report of March 24, 2020, this report contained

Genesis's analysis of whether the North Arch was properly fabricated by W&W-

AFCO. Thus, Genesis's reports were voluntarily shared with an adversary and the

work product protection no longer applies.

     B&G contends that not only are the reports discoverable, but also the facts,

analyses, investigation, and opinions expressed in or absent from these reports. (Doc.

32 at 18.) B&G relies on the doctrine of subject-matter waiver in asking this Court to grant its motion to compel. (*Id.* at 16.) The subject-matter waiver doctrine provides that a party who injects into the case an issue that in fairness requires an examination of communications otherwise protected by the attorney-client privilege loses that privilege. *GAB Business Services, Inc. v. Syndicate 627,* 809 F.2d 755, 762 (11th Cir.1987). However, subject-matter waiver simply does not apply to opinion work product documents. *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1422 (11th Cir.), opinion modified on reh'g, 30 F.3d 1347 (11th Cir. 1994) ("[T]he subject-matter waiver doctrine does not extend to materials protected by the opinion work product privilege.") (citing *In re Martin Marietta Corp.*, 856 F.2d 619, 625–26 (4th Cir. 1988), cert. denied, 490 U.S. 1011, 109 S. Ct. 1655, 104 L.Ed.2d 169 (1989)).

Material that reflects an attorney's mental impressions, conclusions, opinions, or legal theories, is referred to as "opinion work product." *In re Blue Cross Blue Shield Antitrust Litig.*, 2:13-CV-20000-RDP, 2016 WL 11504080, at *5 (N.D. Ala. Sept. 9, 2016) (citing *In re Murphy*, 560 F.2d 326, 336 (8th Cir. 1977)). However, Rule 26(b)(3) expressly defines so-called "opinion" work product as "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Fed R. Civ. P. 26(b)(3)(B); *see also Logan v. Commercial Union Ins. Co.,* 96 F.3d 971, 976 n.4 (7th Cir.1996). And

other courts considering this issue have held that opinion work product protection extends to a party's representative. *See, e.g., Duplan Corp. v. Deering Milliken, Inc.,* 540 F.2d 1215, 1219 (4th Cir.1976); *Smedley v. Travelers Ins. Co.,* 53 F.R.D. 591, 592–93 (D.N.H. 1971). Further, employees have been held to be a party's representative concerning the litigation for Rule 26(b)(3)(B) purposes. *See Canel v. Lincoln Nat. Bank*, 179 F.R.D. 224, 227 (N.D. Ill. 1998) (noting that with respect to an analysis performed by the bank's employee, "courts considering this issue have held that 'opinion' work product protection extends to a party's representative."); *Smedley*, 53 F.R.D. at 592–93 (holding that a party defendant's inter-office memorandum regarding potential liability in a car wreck case was opinion work product); *Pittman v. County of San Diego*, 2010 WL 4570252, at *5 (S.D. Cal. Nov. 3, 2010) ("[R]eports were prepared by the County's employees and are eligible for the doctrine's protection."); *Caliber One Indem. Co. v. Millard Chicago Window Cleaning, LLC*, WL 573895, at *2 (N.D. Ill. Mar. 6, 2006) (finding that reserve calculations prepared by defendant's employees "contain Caliber One's mental impressions," and were protected).

Here, this Court concludes that Genesis is a representative of W&W-AFCO. The case law makes clear that if W&W-AFCO had conducted an examination of the arches with their own employees, the results of that examination would be opinion

work product. This Court sees no reason to limit the applicability of opinion work product to only the employees of a party and not to third parties hired to undertake an investigation in anticipation of litigation. Genesis was hired to investigate the alleged discrepancies and make findings about whether W&W-AFCO met their contractual obligations. Under these circumstances, Genesis was a representative of W&W-AFCO. As a result, their mental impressions, conclusions, and theories contained in the reports and surrounding data, drafts, and communications are opinion work product and subject matter waiver is not applicable. However, B&G is entitled to the materials actually waived. Thus, discovery is limited to the reports already turned over to B&G and the facts and data contained in those reports. Accordingly, B&G's motion to compel is GRANTED IN PART and W&W-AFCO's motion to quash is DENIED IN PART.

### B. Deposition of Genesis

B&G contends that Genesis should be compelled to appear for deposition because they are a fact witness. (Doc. 32 at 19.) W&W-AFCO contends that Genesis is a non-testifying expert subject to the protections of Federal Rule of Civil Procedure 26(b)(4)(D). (Doc. 31 at 15.) B&G argues that even if Genesis is a non-testifying expert, the protections of Federal Rule of Civil Procedure 26(b)(4)(D) have been waived. (Doc. 32 at 23.)

### 1. Genesis is a non-testifying expert witness

"Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specifically employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(D). However, a party may do so if it shows "exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by another means." *Id.*

However, the protections of Rule 26(b)(4)(D) do not protect information created or learned by virtue of the consultant's participation in the underlying events or circumstances giving rise to the lawsuit. *U.S. ex rel. Civ. Const. Techs., Inc. v. Hanover Ins. Co.*, No. 6:13-MC-42-ORL-18TBS, 2013 WL 1810817, at *3 (M.D. Fla. Apr. 29, 2013). Several courts have observed that non-testifying experts can wear two hats. *Id.* One as a formally retained, non-testifying expert to aid a party preparing for litigation, and the other a normal fact witness. *Id.* For example, courts have found that non-testifying experts were also fact witnesses subject to discovery where: the expert was engaged to prepare an invitation to bid for a project;[4] the expert also

---

[4] *U.S. ex rel. Civil Const. Techs., Inc.*, 2013 WL 1810817 at *1.

served as the party's treating physician;[5] or the experts previously worked as in-house employees of a party prior to being specifically retained as experts in anticipation of litigation.[6] Yet, the scope of discovery under these circumstances is limited to facts known and opinions held prior to being specifically employed in anticipation of litigation. *In re Shell*, 134 F.R.D at 150; *Essex Builders* at 705; *Bartram, LLC v. Landmark American Ins. Co.*, 2011 WL 284448, at * 3 (N.D. Fla. Jan. 24, 2011). Here, as discussed above, Genesis was hired in anticipation of litigation. Prior to Genesis being hired, Genesis was not involved with the project. Accordingly, Genesis is not both a fact witness and a non-testifying expert. *U.S. ex rel. Civil Const. Techs., Inc.*, 2013 WL 1810817 at *3.

A review of B&G's subpoenas to Genesis also makes it clear that it is not seeking any factual information outside of Genesis's scope of work as a non-testifying expert. More specifically, B&G is requesting the "data, scans, surveys, measurements, or other information" Genesis obtained as part of its expert investigation related to the Arches; drafts of Genesis's expert reports, analyses, summaries and opinions; Genesis's internal emails and correspondence related to its investigation relating to the Arches; the documents and communications Genesis

---

[5] *Jones v. Celebration Cruise Operator, Inc.*, 11-61308-CIV, 2012 WL 1029469, at *3 (S.D. Fla. Mar. 26, 2012).
[6] *In re Shell Oil Refinery*, 134 F.R.D. 148, 150 (E.D. La. 1990); *Essex Builders Grp., Inc. v. Amerisure Ins. Co.*, 235 F.R.D. 703, 705 (M.D. Fla. 2006).

reviewed, analyzed and evaluated in preparing its expert reports; all documents provided by W&W-AFCO to Genesis relating to the Arches; and Genesis's internal documents relating to its evaluations, analyses, recommendations, reviews, reports, assessments or critiques of the fabrication, handling, design or erection of the Arches. (Doc. 33–8.) Similarly, in its subpoena to testify, B&G demands corporate designee testimony from Genesis relating to its expert qualifications and experience; the information reviewed and methodologies Genesis utilized in preparing its two expert reports; any other investigations, reviews or analyses Genesis performed; "review and understanding" of the contract drawings and specifications and B&G's erection plan; "defects, deficiencies, or non-conformances" observed by Genesis; and the applicability of certain code provisions to the work performed at the project. (Doc. 33–10.) All of these discovery requests relate precisely to Genesis's role as a non-testifying expert engaged in anticipation of litigation. As a result, Genesis cannot be deposed because of their status as a non-testifying expert and the protections afforded by Rule 26(b)(4)(D).

### 2.  Waiver

B&G argues that even if Genesis is a non-testifying expert, the protections of Rule 26(b)(4)(D) were waived when the Genesis reports were produced to B&G. (Doc. 32 at 23.) "[W]hether the protections of Rule 26(b)(4)(D) are subject to

waiver has not been addressed by the Eleventh Circuit, and district courts addressing the issue are divided." *Powers v. United States*, 1:17-CV-071 (LAG), 2019 WL 5801876, at *4 (M.D. Ga. Jan 29, 2019) (citing *Vanguard Sav. & Loan Ass'n, VSL Serv. Corp. v. Banks*, 1995 WL 71293, at *2 (E.D. Pa. Feb. 17, 1995) (finding the only relevant question is whether a party meets the requirements of Rule 26(b)(4)(D)); *Hartford Fire Ins. Co. v. Pure Air on the Lake Ltd. P'ship*, 154 F.R.D. 202, 211 (N.D. Ind. 1993) (finding that Rule 26(b)(4)(D) is arguably subject to waiver)). In general, courts that have found that Rule 26(b)(4)(D)'s protections can be waived have limited the waiver's scope. *Powers*, 2019 WL 5801876 at *4. For example, in *Eidos Display, LLC v. Chunghwa Picture Tubes, Ltd.*, 296 F.R.D. 3, 7 (D.D.C. 2013), the plaintiff sought a protective order to prohibit the deposition of a non-testifying expert. *Id.* at 5. The plaintiff had relied on the expert's declaration in a previous patent reexamination proceeding and cited to it in its brief. *Id.* At the outset, the court found it dubious "whether Rule 26(b)(4)(D) is even subject to waiver, [but] the general trend in other districts has been to find that it is not." *Id.* at 7. Nevertheless, the court held that, to the extent waiver was applicable, the plaintiff had only waived the protection for the declaration itself; so, the non-testifying expert was not subject to deposition. *Id.* Other courts addressing waiver likewise have limited the scope of any waiver. In *Hollinger Int'l Inc. v. Hollinger Inc.*, 230 F.R.D.

508 (N.D. Ill. 2005), the court restricted discovery of an expert's report to only those portions that had actually been disclosed. The court explained that partial disclosure of an expert's findings "did not automatically forfeit the protection of [Rule 26(b)(4)(D)] as to the withheld information or place the entirety of his work at issue...." *Id.*; *see also Plymovent Corp. v. Air Technology Solutions, Inc.*, 243 F.R.D. 139, 146 (affirming quashing of a subpoena duces tecum for non-testifying expert materials because prior disclosure was preliminary and did not go to the merits); *United Steelworkers of Am., AFL-CIO-CLC v. Ivaco*, 2002 WL 31932875, at *5 (N.D. Ga. Jan. 13, 2003) (restricting waiver of work-product to only those documents actually disclosed); *see also Estate of Manship*, 240 F.R.D. at 237 (granting a protective order prohibiting deposition of non-testifying expert because there was no need for cross examination and the expert report was not disclosed). As discussed above, W&W-AFCO has waived the protections of Rule 26(b)(4)(D) only as to the reports given to B&G on March 26, 2020 and June 17, 2020. Therefore, to the extent Rule 26(b)(4)(D) protections are waivable, the waiver is limited to the reports already produced by W&W-AFCO and the experts cannot be deposed. Accordingly, B&G's motion to compel is DENIED IN PART and W&W-AFCO's motion to quash is GRANTED IN PART.

### 3.  CONCLUSION

For the reasons stated above, B&G's Motion to Compel (Doc. 32) is

GRANTED IN PART and DENIED IN PART and W&W-AFCO's Motion to

Quash (Doc. 31) is GRANTED IN PART and DENIED IN PART.

**DONE** and **ORDERED** on November 22, 2021.

_____

L. Scott Coogler
United States District Judge

206770